```
 1                UNITED STATES JUDICIAL PANEL
                              ON
 2                   MULTIDISTRICT LITIGATION

 3  -------------------------------------------------------------
                                   )
 4   In re:  Enhanced Recovery     )  MDL No. 2717
     Company, LLC, Telephone       )
 5   Consumer Protection Act (TCPA))
     Litigation (No. II)           )  Chicago, Illinois
 6                                 )  May 26, 2016
                                   )  12:33 p.m.
 7  -------------------------------------------------------------

 8                   TRANSCRIPT OF ORAL ARGUMENT

 9
     Chair:                    Honorable Sarah S. Vance
10                             United States District Court
                               Eastern District of Louisiana
11

12   Members:                  Honorable Marjorie O. Rendell
                               United States Court of Appeals
13                             Third Circuit

14
                               Honorable Charles R. Breyer
15                             United States District Court
                               Northern District of California
16

17                             Honorable Ellen Segal Huvelle
                               United States District Court
18                             District of District of Columbia

19
                               Honorable R. David Proctor
20                                 (Recused)
                               United States District Court
21                             Northern District of Alabama

22

23   Official Court Reporter:  Nancy L. Bistany, CSR, RPR, FCRR
                               219 South Dearborn, Room 1706
24                             Chicago, Illinois 60604
                               (312) 435-7626
25                             nancy_bistany@ilnd.uscourts.gov
```

1  Oral Argument:

2
   By:      Mr. Abbas Kazerounian
3           Kazerouni Law Group, APC
   For:     Sherryl Medina and Danny Allen
4

5
   By:      Mr. Dana G. Bradford II
6           Smith, Gambrell & Russell, LLP
   For:     Enhanced Recovery Company, LLC
7

1       (Proceedings heard in open court:)
2               JUDGE VANCE:  Next up, No. 2717, In re:  Enhanced
3   Recovery Company, Telephone Consumer Protection Act.
4               And I am not going to attempt the pronunciation of
5   your name.
6               MR. KAZEROUNIAN:  Thank you, Your Honor.  Abbas
7   Kazerounian.
8               JUDGE VANCE:  Kazerounian?
9               MR. KAZEROUNIAN:  Kazerounian.
10              JUDGE VANCE:  Kazerounian.  Okay.  Proceed.
11              MR. KAZEROUNIAN:  Good afternoon.  May it please
12  the Court, I represent the Allen case, but I'm also here
13  speaking on behalf of the Medina and the Williams cases.
14              As an initial matter, Your Honors, the
15  centralization is not an issue.  I think the defendants also
16  agreed that we should centralize all these cases.  The only
17  slight dispute --
18              JUDGE RENDELL:  Well, but the Panel has to agree
19  to centralize all the cases.
20              MR. KAZEROUNIAN:  Absolutely.  Of course.
21              JUDGE RENDELL:  And sometimes even though all the
22  parties agree, we don't view it that way.
23              So maybe you need to argue exactly -- tell us why
24  centralization is necessary.
25              JUDGE BREYER:  And distinguish the two things.

1  Centralization is a good idea.  If we deny centralization,
2  tell us whether you would cooperate, basically eliminate the
3  inefficiencies by agreement among yourselves.
4              MR. KAZEROUNIAN:  Absolutely.  I think we can work
5  together.  And three of the plaintiffs' counsel have already
6  coordinated, and we're willing to work together.
7              And I've worked with the defense counsel in other
8  cases before, and I don't think that would be a problem.
9              I think the main reason for centralization would
10 be as it regards inconsistent rulings throughout the
11 country.  Specifically Florida and, you know, California
12 being in different circuits, it's very possible that we're
13 going to get different certification rulings.
14             JUDGE RENDELL:  On what?  What are the issues
15 you're going to get different rulings on?
16             MR. KAZEROUNIAN:  I think as far as, you know,
17 issues regarding ascertainability potentially and what
18 discovery we would get with regards to prior express consent
19 documents and, you know --
20             JUDGE RENDELL:  These are kind of hypothetical.
21             What's discovery going to look like?  Why is it so
22 complex?
23             MR. KAZEROUNIAN:  Discovery, I think, is very
24 similar to the previous case that the Panel just heard.
25 We're going to be looking for the outbound dial list from

1  the defendant.
2          JUDGE VANCE:  So that's all on a computer record,
3  right?
4          MR. KAZEROUNIAN:  That will be computerized.  And,
5  also, I mean, what we haven't got into is what data the
6  defense has, because sometimes in these cases certain
7  portions of the data would have been purged.  And what is
8  available and what is not, we haven't got into yet.
9          JUDGE VANCE:  They either got it or they don't.
10          MR. KAZEROUNIAN:  Yes, and that is accurate.
11          I think the more complex part of the case or the
12  more complicated part of the case is as it pertains to prior
13  express -- prior express consent documents.  The burden is
14  on the defense to produce those but --
15          JUDGE VANCE:  Isn't that a disputed question?
16          Oh, to produce those documents?  Right.
17          MR. KAZEROUNIAN:  Yes, exactly.  And then the
18  different subclasses that the plaintiffs would bring,
19  whether there's a class to be certified just purely as to
20  the certification without -- or the wrong party course where
21  people were not the intended recipients.
22          JUDGE VANCE:  How much discovery has taken place
23  in the Allen case, and what's left to do in that case?
24          MR. KAZEROUNIAN:  I believe we're about -- we've
25  started discovery, but then the case got stayed pending the

1  MDL hearing.
2              JUDGE VANCE:  But there was a September trial
3  date?
4              MR. KAZEROUNIAN:  Yes, Your Honor.
5              JUDGE VANCE:  And a July cutoff, right?
6              MR. KAZEROUNIAN:  Yes.
7              JUDGE RENDELL:  Did you represent the plaintiffs
8  in the previous case?
9              MR. KAZEROUNIAN:  The previous MDL?
10             JUDGE RENDELL:  Yes.
11             MR. KAZEROUNIAN:  I did have the case, but I
12 wasn't the lead counsel in that MDL.
13             JUDGE RENDELL:  That wrapped up pretty quickly,
14 did it not?
15             MR. KAZEROUNIAN:  Yes, that settled on a 23(b)(2)
16 level, Your Honor, yes.
17             I mean, you know, in conclusion of my arguments,
18 three out of the four class actions are in California.  Two
19 are in the Central District of California.  All the
20 plaintiffs but one, the class representatives are in
21 California.  Most of the plaintiffs' counsel are in
22 California.  And the third-party witnesses that are
23 pertinent to this are in California.
24             JUDGE VANCE:  All right.  Thank you.
25             MR. KAZEROUNIAN:  Thank you, Your Honor.

1      JUDGE VANCE:  Next up, Dana Bradford.
2      MR. BRADFORD:  Good morning.  After all the
3 interesting things Your Honors have learned about cheese and
4 other things this morning, I'm sorry if what I have to get
5 out very quickly is not nearly as exciting.
6      But in our mind, we want to tell you exactly why
7 we believe this case should come to the Middle District of
8 Florida.  And it's a very simple proposition that this Court
9 has reiterated many times; and that is, effective use of
10 judicial resources comes into play when you are considering
11 whether to ask a brand new judge to reinvent the wheel where
12 something has already been done.
13      This case begins and ends with -- at 899 F.Supp.2d
14 1387 when you sent the first -- and they call it TCPA -- to
15 Judge Dalton in the Middle District, Judge Roy Dalton, who
16 -- and I want to in a brief chronology show you a model of
17 an efficient case handling of a matter of this nature.
18      After your decision in October, the case got
19 started in January when it was reassigned in Florida.
20      JUDGE RENDELL:  We're aware of how --
21      MR. BRADFORD:  And you know how it ended.  It
22 ended in August of 2014 with a settlement approval hearing,
23 followed by a final settlement order after notice was given
24 to the class, and a final judgment was entered.
25      Now, the thing they didn't read to you and don't

1  know about or, perhaps, did not care to disclose is that we
2  are still under a mandatory injunction that will affect the
3  outcome of this case.  That injunction was the result of the
4  settlement agreement.
5              JUDGE VANCE:  Well, why didn't you seek to stay
6  these cases and go forward with one of them instead of
7  seeking an MDL?
8              MR. BRADFORD:  Well, there are other cases out
9  there.  The Court sees four.  We've --
10             JUDGE VANCE:  They're individuals, though, right?
11             MR. BRADFORD:  There are other individual cases,
12 and who knows what's going to happen or be on the waterfront
13 as time passes.
14             But in paragraph 5 of the order entered by -- the
15 final judgment entered by Judge Dalton in 2014, he said as
16 follows:  "This Court reserves" -- and I urge you to look at
17 Exhibit 2 to their --
18             JUDGE VANCE:  Are you asking to send it to Judge
19 Dalton?
20             MR. BRADFORD:  Yes, I am.  That's one of the
21 judges we agreed to, along with the plaintiffs' petition in
22 Mr. Medina.  He's in the Middle District, and, in fact, he
23 signed the judgment.  And we were counsel of record for ERC
24 in that case in the Orlando Division.
25             JUDGE VANCE:  I guess the real question is, what

1  is there, there?  I mean, what is there to manage in a case
2  where the defendant is going to produce a bunch of computer
3  records of a call?  It's just not that complicated.
4              MR. BRADFORD:  Well, it actually, though, Your
5  Honor -- let me explain that --
6              JUDGE VANCE:  You're not disputing that you used
7  an automatic caller?
8              MR. BRADFORD:  But let me, if I may -- and I don't
9  mean to interrupt the Court.
10             JUDGE VANCE:  No.  Go ahead.
11             MR. BRADFORD:  In paragraph 8 of the final
12 judgment, which is the key to the -- keys to the kingdom
13 here, Judge Dalton has eight specific conditions of under
14 which we are to do business.  Requirements of keeping
15 records, requirements of keeping logs of consent for the
16 affirmative defense --
17             JUDGE VANCE:  You've had these cases going on for
18 almost a year, and you tell me you haven't raised that issue
19 yet?
20             MR. BRADFORD:  In 18 months, nobody has come to
21 Judge Dalton with a single motion proceeding, order to
22 show -- request for order to show cause suggesting that in
23 any way my client has disobeyed in any of the eight
24 provisions -- and these are --
25             JUDGE RENDELL:  Where -- I'm not sure where you're

```
 1   going with this.
 2             MR. BRADFORD:  -- of the injunction.
 3             JUDGE RENDELL:  What is -- I mean, part of this
 4   says --
 5             MR. BRADFORD:  Well, I'm about to tell you.
 6             JUDGE RENDELL:  -- this is not that complex.  It
 7   was handled so quickly, and there's really nothing to
 8   dispute.  I'm not sure where you're going.
 9             MR. BRADFORD:  Well, the injunction is in place,
10   though, until August.  It's still there.  It's ongoing until
11   the end of this year in August --
12             JUDGE VANCE:  So why didn't you move to --
13             JUDGE HUVELLE:  Why didn't anybody move to
14   enforce --
15             MR. BRADFORD:  I'm sorry?
16             JUDGE HUVELLE:  Why didn't anybody move to enforce
17   if there's arguable violations of an injunction where you --
18             MR. BRADFORD:  That's a question they'll -- only
19   they can answer that question if they think they have a beef
20   against us.  That's why all -- and, of course, we're there.
21             The discovery to be done is consistent with the
22   way we do business and knowledge already acquired by Judge
23   Dalton in two years of litigation previously, orders he has
24   entered, and more particularly, the settlement order
25   approving the class -- which agreed to the certification of
```

```
1   a class without an adversary hearing --
2           JUDGE VANCE:  I think we've heard your argument.
3           MR. BRADFORD:  -- and so forth.
4           JUDGE VANCE:  Thank you.
5           MR. BRADFORD:  So that's why it's important and
6   why we think it should be in the Middle District.
7           JUDGE VANCE:  Thank you.
8       (Proceedings concluded at 12:42.)
9
10
11
12
13
14
15
16
17                    C E R T I F I C A T E
18        I, Nancy L. Bistany, certify that the foregoing is
19  a complete, true, and accurate transcript, to the best of my
20  ability and understanding, from the record of proceedings on
21  May 26, 2016, in the above-entitled matter.
22
23  /s/ Nancy L. Bistany, CSR, RPR, FCRR          June 8, 2016
24      Official Court Reporter                       Date
25
```